UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GABRIEL MIRANDA, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-23-CV-683-FB (HJB) |
| KENDALL COUNTY, TEXAS, | § § § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment (Docket Entry 18) filed by Defendant Kendall County, Texas ("the County"). Pretrial matters have been referred to the undersigned for consideration. (Docket Entry 20.) For the reasons set out below, I recommend that the County's motion (Docket Entry 18) be **GRANTED** and this case be **DISMISSED**.

**I.      Jurisdiction.**

Plaintiff Gabriel Miranda asserts a claim against the County pursuant to 42 U.S.C. § 1983. (*See* Docket Entry 1, at 1, 3–4.) The Court has jurisdiction over such claims pursuant to 28 U.S.C. § 1331. I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

**II.     Background.**

On December 7, 2021, Plaintiff pleaded guilty to driving while intoxicated, in the 451st District Court, in Kendall County, Texas. (Docket Entry 1, at 2.) He was sentenced to confinement for 360 days in the Kendall County Jail, but the sentence was "probated over 15 months." (*Id.*)

Nevertheless, Plaintiff was required by statute to serve a mandatory "minimum term of confinement of 72 hours." *See* TEX. PEN. CODE § 49.04(b).

Plaintiff reported to the Kendall County Jail on December 10, 2021, to serve his 72 hours of mandatory confinement. (*See* Docket Entry 18-1, at 62; Docket Entry 21-1, at 3.) The inmates at the jail were required to sleep in assigned bunk beds. (*See* Docket Entry 21-5, at 41–42.) Plaintiff, who was 5'8", 323 lbs., diabetic, and had a history of seizures,[1] was assigned a top bunk, based on availability at the time. (*See* Docket Entry 21-1, at 1–2; Docket Entry 21-5, at 38, 41–42.) While descending the ladder from his bed the next morning, Plaintiff fell and injured himself. (*See* Docket Entry 18, at 2; Docket Entry 18-1, at 15; Docket Entry 21-4, at 3, 5.)[2] This lawsuit followed.

Plaintiff filed his Complaint on May 25, 2023, asserting a *Monell*[3] claim against the County, under 42 U.S.C. § 1983. (*See* Docket Entry 1, at 1.) He contends that the County "had a de facto or actual policy" that violated his rights "under the Eighth, and Fourteenth Amendments," by "forcing [him] to sleep on the top bunk," even though this "would ultimately lead to injury."

---

[1] In his complaint, Plaintiff also notes a leg injury. (*See* Docket Entry 1, at 2.) But he later testified that it "was just a bruise" he had "a year or so" before he checked into the jail, which resulted in no damage to his leg, and for which no medications were ever prescribed. (*See* Docket Entry 21-6, at 29, 32.)

[2] Plaintiff testified that, prior to his fall in the jail, he regularly ascended and descended ladders while painting houses, with some such ladders reaching heights "up to 60 feet." (*See* Docket Entry 21-6, at 57–58.)

[3] "A *Monell* claim is a § 1983 claim against a local government for 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury' in violation of the Constitution, as incorporated against the locality by the Fourteenth Amendment." *Clark v. City of Alexandria*, 116 F.4th 472, 488 n.30 (5th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 695 (1978)), *cert. denied*, 145 S. Ct. 1331 (2025).

(*Id.* at 3.) The County now moves for summary judgment. (Docket Entry 18.) Plaintiff has responded (Docket Entry 21), and the County has replied (Docket Entry 22).

### III. Summary Judgment Standard.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material when it "might affect the outcome . . . under the governing law." *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen*, 63 F.4th at 300 (quoting *Anderson*, 477 U.S. at 248).

When considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, "facts that are subject to genuine dispute are viewed in the light most favorable to [the nonmovant]," *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 749–50 (5th Cir. 2023), and the Court "construe[s] all reasonable inferences in [the nonmovant's] favor," *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

### IV. Discussion.

To survive summary judgment on a *Monell* claim, Plaintiff must establish a genuine dispute of material fact as to three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). To establish the third element, Plaintiff must demonstrate a genuine dispute as to whether his being assigned a top bunk amounted to a violation of the Constitution. *See Wood*

3

*v. Bexar Cnty., Tex.*, 147 F.4th 534, 548 (5th Cir. 2025) ("To prevail on a *Monell* claim, [the plaintiff] must have suffered a constitutional violation."). Only if there is a genuine dispute as to an underlying constitutional violation must the Court consider whether there is also a genuine dispute as to the causal relationship between such violation and an official policy or custom attributable to the County.

"The Constitution imposes a duty to provide for the safety and wellbeing of the people it incarcerates." *Williams v. City of Yazoo, Miss.*, 41 F.4th 416, 422 (5th Cir. 2022). "For people already convicted of a crime, this duty stems from the Eighth Amendment's prohibition on cruel and unusual punishments." *Id.* at 423. For pretrial detainees, who "are presumed to be innocent and held only to ensure their presence at trial," *Bell v. Wolfish*, 441 U.S. 520, 528 (1979), the duty "stems from due process instead," *Williams*, 41 F.4th at 423.

Although the parties proceed on the assumption that Plaintiff was a pretrial detainee at the Kendall County Jail (*see* Docket Entry 18 at 5–6; Docket Entry 21, at 3), this is an Eighth Amendment case, not a due process case. Plaintiff was not awaiting trial during his period of detention; he was already convicted of driving while intoxicated, and had been "sentenced to 360 days confinement in the Kendall County Jail." (Docket Entry 1, at 2.) While that full sentence was "probated over 15 months," he was required to enter the Kendall County Jail on December 10, 2021, to serve a mandatory minimum of "72 hours of confinement." (*Id.*) *See* TEX. PEN. CODE § 49.04(b). As that mandatory confinement was punishment for a criminal conviction, the undersigned finds that Plaintiff was a prisoner—not a pretrial detainee. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) ("The State cannot punish a pretrial detainee."). Accordingly, Plaintiff's § 1983 claim must be predicated on an Eighth Amendment violation.[4] *See*

---

[4] The difference matters. If a mere detainee's Fourteenth Amendment rights were at issue,

4

*Simpson v. Cisneros*, 129 F.4th 901, 905 (5th Cir. 2025) ("The Eighth Amendment, *not* the Fourteenth Amendment, protects prisoners from mistreatment and malfeasance.").

"It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024) (citation modified). The Eighth Amendment, however, "does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To succeed on an Eighth Amendment challenge to prison conditions, a plaintiff must meet two tests: "prison conditions must pose an unreasonable risk of serious damage to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Garrett*, 96 F.4th at 900 (citation modified). Here, the Court need consider only the objective component to resolve this case.

To meet the objective test, "the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (citation modified). Thus, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

---

his claim would have to be further sub-classified as "either as a condition of confinement or as an episodic act or omission." *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). But the Supreme Court "has specifically rejected [this] distinction . . . . [i]n the context of claims arising under the Eighth Amendment." *Earrey v. Chickasaw Cnty., Miss.*, 965 F. Supp. 870, 874 (N.D. Miss. 1997) (citing *Farmer*, 511 U.S. at 838, and *Wilson v. Seiter*, 501 U.S. 294, 300 n.2 (1991)); *see Wilson*, 501 U.S. at 300 n.2 ("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else.").

On facts quite similar to those presented here, another court applied the objective component of the Eight Amendment test to grant summary judgment. *See Estate of Simpson v. Gorbett*, No. 1:14-cv-1035-SEB-MJD, 2016 WL 9663338, at *5 (S.D. Ind. June 22, 2016) ("*Simpson I*"), *aff'd*, 863 F.3d 740 (7th Cir. 2017) ("*Simpson II*"). In that case, the plaintiff, who weighed 368 lbs., checked himself into jail over the weekend to serve a period of confinement pursuant to a DWI conviction. *See Simpson II*, 863 F.3d at 742–43. He was drunk when he checked in, so the jailers initially placed him in a holding cell to sober up for a while. *See id.* at 742. "After they thought he was sober, they assigned him to an upper bunk in a two-person cell, even though he was obviously obese." *Id.* While sleeping, he fell out of the bunk on to the concrete floor and died from the resulting injuries. *Id.* The decedent's estate sued, arguing that "allowing an inmate of [his] size to sleep on a top bunk . . . . posed a substantial risk of harm," which the jailers disregarded. *Simpson I*, 2016 WL 9663338, at *6.

The district court granted summary judgment. As the court explained, the question presented was "whether allowing a 368 lb. inmate to sleep on a 30-inch-wide bunk located four feet off the ground presents a sufficiently substantial risk of serious danger to that inmates health." *Simpson I*, 2016 WL 9663338, at *6. The court answered that question in the negative, concluding that, at most, it "might suggest that [he] was deprived of some level of comfort, but it does not support a finding that [he] was deprived of the minimal life necessity of 'reasonable safety.'" *Id.* (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). The court held that the decedent's top-bunk placement did not create "a substantial risk to his health and safety." *See id.* This was true, the court held, "notwithstanding the jail's guideline . . . that inmates weighing over 350 lbs. satisfy the cell assignment criteria for a bottom bunk." *Id.*

6

When the decedent's estate appealed, the Seventh Circuit affirmed. *See Simpson II*, 863 F. 3d at 742. The court found the estate's argument—that the assignment of "a visibly obese man who had been highly intoxicated 13 hours earlier, to a narrow upper bunk . . . . was unreasonably dangerous"— rested "entirely on hindsight." *Id.* at 745–46. And because the requisite "inquiry is objective," the court concluded that it could not deem the conditions unreasonably dangerous based "on what came to pass." *Id.* at 746. Considered objectively, the court of appeals determined that the decedent's top-bunk assignment was not "so dangerous that it denied [him] 'the minimal civilized measure of life's necessities.'" *Id.*[5]

*Simpson I* and *Simpon II* persuasively apply the objective test to facts remarkably similar to those presented in this case.[6] Indeed, the facts in *Simpson* reveal a greater risk than those here: the decedent in that case weighed more than Plaintiff, and he was intoxicated not long before the incident. Following the reasoning in the *Simpson* cases, the Court should find that, while the assignment of a top bunk to Plaintiff may have exposed him to some discomfort, it was not so unreasonably dangerous as to deprive him of the minimal civilized measure of life's necessities. *See Simpson II*, 863 F.3d at 745–46; *Simpson I*, 2016 WL 9663338, at *6. While Plaintiff fell and injured himself descending the ladder from his bunk,[7] the Court's objective inquiry cannot turn on "what came to pass." *See Simpson II*, 863 F.3d at 746. In short, the assignment of a top bunk to Plaintiff did not amount to cruel and unusual punishment.

---

[5] The Seventh Circuit also found that the jailers' failure to comply with the jail's own bunk-assignment policy made no difference, *see Simpson II*, 863 F.3d at 746.

[6] There appear to be no other reported cases addressing this or a sufficiently similar fact pattern.

[7] As previously noted, *see supra* n. 2, Plaintiff also regularly ascended and descended ladders of vastly greater heights prior to his fall at the jail. (*See* Docket Entry 21-6, at 57–58.)

## V. Conclusion and Recommendation.

Based on the foregoing, I recommend that the County's Motion for Summary Judgment (Docket Entry 18) be **GRANTED**, and this case **DISMISSED**.

## VI. Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on November 6, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge